C. FALCON, Appellant, v. W. C. FALCON et al., Appellees.

No. 40832.

FEBRUARY 9, 1932.

REHEARING DENIED MAY 4, 1932.

Hann & Randall, for appellee Lea Fairley.

Chas. J. Haas, for appellant, C. Falcon.

EVANS, J.—The note in suit is for $1500.  It bears date August 19, 1922, and was drawn to become due in one year from date.  The maker thereof was defendant W. C. Falcon, and the payee and holder thereof was the defendant Lea Fairley.  On June 26, 1923, the note was negotiated by the defendant Fairley through his agent, John Fairley, to the plaintiff herein for its full value, both principal and interest.  John Fairley and Lea Fairley were father and son, and plaintiff C. Falcon and W. C. Falcon, the maker of the note, were father and son.  The two younger men were first cousins and the two older men were brothers-in-law.· The maker of the note is referred to in the evidence hereafter quoted as "Bill," and the defendant Fairley as "Lea."  Lea Fairley alone interposes a defense and we shall

refer to him herein as the defendant. The fighting defense pleaded is that the note was endorsed to the plaintiff with the qualified endorsement "without recourse" and not otherwise; that after the sale and delivery thereof to the plaintiff, he wrongfully altered said qualified endorsement by erasure of the words "without recourse," and by leaving the name of the plaintiff thereon as a purported blank endorsement. The endorsement, as originally made, including the name of Lea Fairley, was written by his father, John Fairley, as agent. This endorsement purported in terms to be "without recourse." The words "without recourse" were afterwards erased by the plaintiff. The circumstances of such erasure are in dispute. The contention for the plaintiff is that when he saw the qualified endorsement he objected to it and refused to take the note; that thereupon John Fairley, the agent, consented that the plaintiff might erase the qualifying words; that pursuant to such consent, the plaintiff did erase the same. The substance of his contention is that this was done as a part of the negotiation of transfer, and that it was not done *after* the sale and delivery of the note.

The contention for the defendant at this point is to be found in the testimony of the agent, John Fairley. This is to the effect that when he delivered the note to the plaintiff it carried the qualified endorsement; that he received the plaintiff's check therefor; that the only conversation had between him and the plaintiff concerning the form of the endorsement was after the complete delivery of both note and the check therefor; that he did not consent to any change; that on the contrary the plaintiff expressed acquiescence in the form of the endorsement. John Fairley testified in part as follows:

"While I was talking with Mr. Falcon I showed him the notes. I was standing up by the desk. I was standing up by his side. He told me that he would take the Nelson note and the note in controversy, for the note in controversy he would pay the full amount of principal with interest computed to date. He turned to the desk to compute the interest, and while he was doing that I signed the note and sat down in a chair probably four or five feet away from him. While I was signing the note Mr. Falcon stepped to one side to some other drawer to get a book to show him what the interest was on it. He came back to

where I had been standing and figured up the interest, and came back with the check and handed me the check. He did not make out the check and compute the interest at the desk where the notes were. He was a few feet away. I was probably six or seven feet away from him. When he made out the check he handed that to me and the next thing he did was to reach over and pick up the notes. Q. And then he objected that this note was endorsed 'without recourse?' A. Not at that time. Then he says, 'I wish you hadn't signed without recourse on this note.' He says, 'It's all right, Bill is President of the bank up at Central City and I intend to handle this note through the bank here and it would look just a little better if that had not been on it.' He says, 'You needn't to have been afraid that Lea would ever have to pay this note because this is Bill's note to pay and Bill will pay it. If he don't pay it, I will.' Q. You didn't say anything? A. Well, yes, I says that was the way Lea instructed me to sign this note. Nothing else was done that I recall. He absolutely did not say there in my presence that that would have to be taken off. I did not see him take up a knife to take it off and didn't know at that time that he was doing anything. Q. When you left the bank you were under the impression there that he was making the change at that time? A. I did not know anything about it. I could not see what he was doing. Q. You didn't know at that time that he was doing anything? A. I did not. I didn't see him. I wrote the endorsement with a lead pencil. I got the lead pencil out of my pocket. The words I wrote on there, according to my recollection were, Lea Fairley, 'without recourse' right under it. It was all written at the same time and at the time when I stepped up to the desk with Mr. Falcon where I made the endorsement. There was no other writing on the back of the note at the place where this endorsement was made at that time. The only writing that was put on by me was in lead pencil,—I did not use a pen. It is not a fact that after he had agreed to take it and while he was making his computations and fixing up the check that I stepped to the desk and added those words in ink. Q. You were sitting behind him? A. Just a little back of him. Q. Where were the notes at the time? A. They were lying on his desk. Q. Where did you endorse these notes? A. On his desk. Q. Were you standing up until you endorsed them? A. Yes. Q. After

the endorsement you left them lie there on his desk? A. Yes. Q. Did you sit down in a chair? A. Yes. Q. Had he completed his figuring when you sat down in the chair? A. Oh, no. Q. Did you stand up by the desk by the side of him at the time you were making the endorsement? A. Yes. Q. Now this note and the other note that you had there when you completed your endorsement, you say Mr. Falcon was figuring right there by the side of you? A. Yes. Q. It was already understood that he was to take the notes? A. Yes. Q. You left the notes right beside him? A. Yes. Q. On the same desk where he was working? A. Yes. Q. He handed you the check, you say? A. Yes. Q. He said you would have to erase that? A. No, he did not. Q. Did he do it there in your presence? A. No, he did not. Q. What did he say—what were the words he used about this rubbing out? A. He said, 'I wish you would not have put it on. I guess I will just rub it out.' Q. Now you sat right there,—did you say anything? A. I said nothing. Q. He didn't say anything? A. No, sir. Q. Did he turn to his desk? A. We were facing his desk. Q. So that in fact his back would have been to you? A. Yes. Q. You think, then, he was making this erasure? A. I could not see, I couldn't say. Q. You took the checks and went away? A. I had the check and had it in my pocket long before that.''

The narrow issue of fact between the parties, as indicated above, is: Was the erasure made by the plaintiff *in the course of the negotiations* and as a part of the negotiations and pursuant to the consent of John Fairley? Or was it made with, or without, the consent of John Fairley *after* the completion of the negotiations?

At the close of the evidence, the plaintiff moved the court for a peremptory instruction to the jury, to the effect that the defendant must be deemed to have accepted and ratified all the acts of his agent because he had received from his agent the full proceeds of the transaction and had ever since retained the same, and that he could not therefore repudiate the burdens of the alleged contract. The court denied the motion.

The plaintiff relies for reversal upon eight assigned errors. Each and all of them are predicated upon the same ultimate proposition contended for in his motion. Though the different

assignments present the question in varying form, we have no occasion to consider them separately or serially. We may properly pass to a consideration of the ultimate proposition upon which all the assigned errors are based: Was the plaintiff entitled to a peremptory instruction, as prayed?

The doctrine invoked by the plaintiff was long ago announced in Eadie, Guilford & Co. v. Asbaugh, 44 Iowa 519, and in many later cases, which we have no occasion to pursue. The plaintiff is entitled to the benefit of the doctrine announced in the cited case so far as it is pertinent to the record made herein. The pertinency of the doctrine to this record is dependent upon the finding of facts by the jury. This alone negatives the right of the plaintiff to a peremptory direction to the jury. If the jury should fail to find that the alteration was made after delivery, or find that it was made before delivery as a part of negotiation of purchase, then the rule contended for would be pertinent to the case. On the other hand the jury could find that the instrument had been delivered to the plaintiff carrying the endorsement "without recourse" and that the negotiations were completely closed and the sale fully executed by the mutual delivery of the note to the plaintiff and of his check to the agent, and that the conversation concerning the form of the endorsement occurred thereafter. Upon such finding the doctrine invoked could not be available to the plaintiff. This would be so even though the jury might also find that after the close of the transaction, the plaintiff and John Fairley did mutually agree that the plaintiff might erase the objectionable words. Though it be true that the agent had complete authority to negotiate the instrument in the first instance, it would not follow that he had authority to make the subsequent agreement contended for. When the agent received plaintiff's check, as the purchase price, in a completed transaction, the title to the check vested immediately in his principal. His agency was consummated. The mutual rights of the principal and the purchaser were fixed. If thereafter the agent did in fact assume to surrender a right already accrued to his principal, or to increase the obligation of his principal, his authority to do so was at least subject to challenge. Authority to sell in the first instance did not necessarily confer authority upon him afterwards to rescind the sale or to modify its terms. The doctrine invoked by the plaintiff, of

ratification because of retention of the proceeds, would be pertinent so far as the contract of sale was concerned. It would not be pertinent to a subsequent contract of modification or rescission. The court in its instructions gave to the plaintiff the benefit of the doctrine so far as the findings of the jury might render it applicable. The form of the instructions is not otherwise complained of than that they failed to be peremptory upon this issue. The jury could find, under the evidence, that there were two contracts; that the contract of sale was complete in the first instance; and that subsequently the parties agreed to change it. Upon such finding the benefit received by the defendant would be the benefit of the contract of sale. He concedes his ratification of that. Indeed, he contends for it. That contract was "without recourse." If the plaintiff and the agent agreed to a subsequent modifying contract, the defendant challenges the authority of his agent to bind him to such subsequent contract. As to the subsequent contract, the doctrine of Eadie, Guilford & Co. v. Asbaugh has no application. As to such event, the general law of principal and agent applies and the authority of the agent must be proved by the party asserting it. This distinction was recognized in the court's instructions. It was because of this distinction that the plaintiff was not entitled to a peremptory instruction. If it were undisputed upon this record that the original contract of sale included in its negotiations all that was said and done concerning the qualified endorsement, a very different question would be presented as to the applicability of the doctrine invoked by the plaintiff. Such is not the record. We reach the conclusion that the trial court properly submitted the question. True the plaintiff contends that the evidence is conclusive upon that question and that there is no substantial evidence in the record that would separate the latter negotiations from the former. Sufficient to say that the subsequent conduct of the plaintiff himself, gives much corroboration to the contention of the defendant. He bought this note against his son, less than sixty days before it became due. When it became due, it was not honored. It bore 8% interest. It was carried by the plaintiff for more than four years without notice to, or claim upon, the defendant, nor is there any doubt of defendant's belief during all that period that he had no interest in the matter. The subsequent conduct of each party therefore was consistent

with the attitude of the defendant and inconsistent with that of the plaintiff. We think that the contention of the appellant is not tenable.

The judgment below is accordingly—Affirmed.

All Justices concur.